**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-24-04228-001-TUC-JGZ (BGM) |
| Plaintiff, | **ORDER** |
| v. | |
| Onik Harutyuni Papoyan, | |
| Defendant. | |

On December 20, 2024, the Government filed its Notice of Intent to Use Other Act Evidence Pursuant to Fed. R. Evid. 404(b). (Doc. 51.) In the notice, the Government states it intends to introduce as "other act" evidence Defendant's statements that he used a fraudulent Russian passport to enter Mexico before arriving at the United States border in Nogales, Arizona in April 2024. (*Id.*) In the pending motion in limine, Defendant Onik Harutyuni Papoyan seeks to preclude admission of such evidence. (*See* Doc. 56.) For the reasons stated below, the Court will grant Defendant's Motion.

## DISCUSSION

The Government contends that Defendant's purchase, use, and destruction of a fraudulent Russian passport is admissible either as evidence inextricably intertwined with the charged offense, or admissible under Rule 404(b) as evidence of Defendant's intent, knowledge, motive, and lack of mistake.

**A. Inextricably Intertwined Evidence**

Prior act evidence may be considered "inextricably intertwined" with a charged

offense, and thus may be admitted regardless of Rule 404(b), if: (1) the evidence constitutes a part of the transaction that serves as the basis for the criminal charge; or (2) it is necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime. *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004).

The Government argues "evidence that the defendant purchased, used, and discarded a fraudulent Russian passport to travel through Mexico so he could arrive at the southern border of the United States constitutes part of the defendant's scheme to defraud the United States, and shows the defendant's pattern of calculated and deliberate actions to gain entry into the United States by any means necessary." (Doc. 51 at 5.) The Government further argues that evidence of the fraudulent Russian passport is inextricably intertwined with the charged offense because it allows the Government to offer the jury a coherent story about how Defendant arrived in Nogales after he was denied a U.S. visa in Armenia in 2023 and why he was placed on a watchlist prior to attempting to enter the United States in 2024. (*Id.*)

Defendant's use of a fraudulent passport to enter Mexico does not constitute a part of a single criminal transaction that serves as the basis for the charge in this case. Defendant is charged with knowingly presenting to a consular officer a false statement with respect to a material fact in a DS-160 nonimmigrant visa application in violation of 18 U.S.C. § 1546(a). (Doc. 43.) The indictment charges that between August 8, 2022, and May 26, 2023, Defendant made false statements on a DS-160 application that: (1) he had never been refused a visa to the United States; (2) he had never served in the military; (3) he had never been involved with and a member of a paramilitary unit; and (4) he did not have specialized training in weapons. (*Id.*) The manner of Defendant's entry into Mexico almost a year later is not a part of the same allegedly criminal transaction. After having been denied a nonimmigration visa in 2023, Defendant arrived at the port of entry in Nogales in April 2024 to attend a scheduled CBPOne appointment. As Defendant notes, he is not charged with illegally entering Mexico, the possession of falsified documents, nor with any immigration fraud on the United States after May 26, 2023. (Doc. 56 at 3.)

Moreover, Defendant's use of a fraudulent passport to enter Mexico is not necessary to permit the prosecution to offer a coherent story regarding the commission of the crime charged. It is not necessary for the jury to understand how the Defendant entered Mexico before going to the port of entry in Nogales or *why* Defendant was placed on a watchlist prior to arriving at the border. (Doc. 51 at 5.) The manner in which Defendant entered Mexico is irrelevant to explaining to the jury "the time, place, and circumstances of the acts which form the basis of the [fraudulent visa application]." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995). The Department of State denied the visa application at issue almost a year before Defendant's CBPOne appointment in Nogales.

**B. Rule 404(b)**

Federal Rule of Evidence 404(b) forbids admission of evidence of a person's other crimes, wrongs, or acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" but provides that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The "rule is one of inclusion" in that "other acts evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity." *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982).

Other act evidence is admissible under Rule 404(b) if: (1) the evidence tends to prove a material point in issue; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) if admitted to prove intent, the act is similar to the offense charged. *United States v. Hollis*, 490 F.3d 1149, 1153 (9th Cir. 2007). If the evidence meets this test, the court must then determine whether the probative value of the evidence is substantially outweighed by its prejudicial effect under Rule 403. *United States v. Nelson*, 137 F.3d 1094, 1107 (9th Cir. 1998).

The Government argues that evidence that Defendant obtained a fraudulent Russian passport to enter Mexico is extremely relevant and material to the charge because it: (1) demonstrates Defendant's intent to defraud the United States; (2) allows the Government

1  to explain how Defendant arrived at the southern border after being denied a visa abroad
2  on two prior occasions; (3) allows the Government to demonstrate Defendant's knowledge
3  of how to circumvent visa requirements in the United States and Mexico; (4) shows
4  Defendant's concealment of relevant answers in his visa application was not innocent; and
5  (5) allows the jury to understand the defendant's intent, motive, knowledge, and lack of
6  mistake of his prior false statements to a consular officer in Armenia. (Doc. 51 at 7–8.)
7  Other than materiality, the Government's Notice does not analyze the 404(b) prerequisites.
8  (*See id.*)

9        Evidence Defendant obtained and used a Russian passport to enter Mexico does not
10 tend to prove a material point in issue in this case. First, Defendant's use of the fraudulent
11 passport to enter Mexico is not relevant to Defendant's knowing intent to make false
12 statements in the visa application he filled out almost two years prior to entering Mexico.
13 According to the Government, Defendant destroyed the passport prior to his CBPOne
14 appointment and did not attempt to use it to enter the United States. While the use of the
15 false passport to enter Mexico to get to the United States might circumstantially show
16 Defendant's intent to enter the United States, Defendant's general intent to enter the United
17 States is self-evident from the fact that he filled out the visa application and the fact that he
18 later arrived at the U.S. border. The Government describes Defendant's conduct as a
19 "scheme to defraud the United States" and a "pattern of calculated and deliberate actions
20 to gain entry into the United States by any means necessary." (Doc. 51 at 5.) However,
21 Defendant is not charged with a broad fraudulent scheme, but rather the discrete crime of
22 making false statements in a visa application sometime between August 8, 2022 and May
23 26, 2023.

24       Second, as discussed above, the manner in which Defendant arrived at the southern
25 border after being denied a visa abroad is not relevant to, or a fact necessary to the jury's
26 understanding of, the charged conduct. It is unclear that the denial of a travel visa to the
27 United States would have any bearing on Defendant's ability to obtain permission to enter
28 Mexico. That Defendant traveled to Mexico, entered Mexico, and traveled through Mexico

to the Port of Entry in Nogales, Arizona is sufficient for the jury's understanding of how Defendant arrived at the border.

Third, Defendant's knowledge of how to circumvent Mexican visa requirements does not necessarily demonstrate Defendant knew how to circumvent the United States' visa requirements, or that he had such knowledge *before* filling out his visa application. After Defendant's visa application was denied, he apparently attempted to gain entry to the United States by legitimate means, i.e., attending a scheduled CBPOne appointment.

Fourth, Defendant's subsequent fraudulent act is not material to whether he innocently filled out his prior visa application. Again, Defendant is not charged with a broad scheme to defraud the United States.

Fifth, the primary relevance of Defendant's subsequent use of a fraudulent passport is that it tends to show Defendant's propensity for committing fraud with respect to immigration documents, which in turn would suggest that Defendant knowingly made false statements in his previous visa application. Propensity evidence, absent more, is prohibited.

Even if evidence of the fraudulent Russian passport was admissible for a non-propensity purpose and material to a fact in issue, such evidence also does not meet another requirement of the Rule 404(b) prerequisite test. Given its lack of relevance, the use of the fraudulent passport is too remote in time from the charged conduct, especially because it took place roughly 20 months *after* Defendant submitted his visa application in August 2022.

Finally, the evidence of the fraudulent Russian passport is inadmissible under Rule 403 because the probative value of the evidence is substantially outweighed by the risk of unfair prejudice to the Defendant. The jury does not need to hear evidence of the passport to understand Defendant's intent, motive, knowledge, or lack of mistake in making false statements on the visa application, and the evidence would only minimally aid jurors' understanding of the timeline of events. But, if the jury hears such evidence, it is likely that even with a limiting instruction, jurors will be unable to avoid making the inference that because Defendant fraudulently obtained a Russian passport, he must also have acted with

fraudulent intent and knowingly made false statements on the visa application.

In a separate motion, Defendant asserted he has a right to present the fact that he truthfully volunteered information to the consular officer at the Nogales Port of Entry as evidence refuting the allegation that he knowingly made false statements, involving the same subject matter, during the visa application process in 2023. (Doc. 49 at 1.) At hearing on the motions in limine, the Government asserted that the real reason Defendant provided truthful information at the Port of Entry was because he was seeking political asylum, which is a protected application that the Government would prefer not to address at trial. The Defendant responded that if the Russian passport information is not introduced, Defendant need not address the issue of Defendant's request for asylum.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Preclude Other Act Evidence Pursuant to Fed. R. Evid. 404(b) (Doc. 56) is **granted.** The Government is precluded in its case-in-chief from introducing evidence that Defendant purchased, used, and discarded a fraudulent Russian passport to enter Mexico.

Dated this 16th day of January, 2025.

_Jennifer Zipps_
Jennifer G. Zipps
Chief United States District Judge